IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BRAYDAN A.,[1]

                Plaintiff,

      v.

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,

                Defendant.

No. 3:20-cv-01408-CL

**OPINION AND ORDER**

**CLARKE, U.S. Magistrate Judge.**

      Braydan A. ("Plaintiff") brings this appeal challenging the Acting Commissioner of the Social Security Administration's ("Commissioner") denial of his application for Supplemental Social Security Income ("SSI") under Title II of the Social Security Act. The Court has jurisdiction to hear Plaintiff's appeal pursuant to 42 U.S.C. § 405(g), and the parties have consented to the jurisdiction of a U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons explained below, the Court affirms the Commissioner's decision.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or based on legal error.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

### I.    PLAINTIFF'S APPLICATION

Plaintiff filed his application for SSI on April 3, 2018, alleging an onset date of April 20, 2012, due to blind or low vision, mid-lower spine scoliosis, attention-deficit hyperactivity disorder (ADHD), insomnia, bipolar manic depression, and early onset glaucoma. (Tr. 145-50, 167.) The Commissioner denied Plaintiff's application initially and upon reconsideration. (Tr. 68-69.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which

was held on January 30, 2020. (Tr. 34-53.) Following the administrative hearing, ALJ Elizabeth

Watson issued a written decision dated February 26, 2020, denying Plaintiff's application. (Tr.

14-29.) The Appeals Council denied Plaintiff's request for review, making the ALJ's decision

the final decision of the Commissioner. (Tr. 1-6.) Plaintiff now seeks judicial review of that

decision.

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which . .

. has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42

U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1)

whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a

severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether

the claimant can return to any past relevant work; and (5) whether the claimant can perform other

work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*,

262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those

steps, the claimant is not disabled. *Id.* at 954. The Commissioner bears the burden of proof at

step five of the analysis, where the Commissioner must show that the claimant can perform other

work that exists in significant numbers in the national economy, "taking into consideration the

claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d

at 1100. If the Commissioner fails to meet this burden, then the claimant is disabled. *Bustamante*, 262 F.3d at 954.

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 16-29.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 3, 2018. (Tr. 16.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: major depressive disorder, posttraumatic stress disorder (PTSD), schizotypal personality disorder, unspecified depressive disorder, bipolar disorder, anxiety disorder, autism spectrum disorder and ADHD. (*Id.*)

At step three, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. (Tr. 18.) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels subject to the following non-exertional limitations:

> He is limited to understanding and carrying out simple instructions in a work environment with few changes. He also is limited to no contact with the general public and occasional contact with coworkers and supervisors.

(Tr. 18-19.)

At step four, the ALJ concluded that Plaintiff has no past relevant work. (Tr. 28.) At step five, the ALJ concluded that a significant number of jobs existed in the national economy that he could perform, including work as a floor cleaner and car lot attendant. (Tr. 29.) Thus, the ALJ denied Plaintiff's application for disability benefits. (*Id.*)

## DISCUSSION

Plaintiff argues that the ALJ erred in four ways: (1) Plaintiff's RFC was not supported by substantial evidence; (2) the ALJ improperly rejected lay witness testimony; (3) the ALJ failed to

properly evaluate Plaintiff's physical impairments at step two; and (4) the ALJ's step-five analysis was unsupported by substantial evidence. Pl.'s Opening Br. 9-20, ECF 21. For the reasons set forth below, the Commissioner's decision is affirmed.

## I.    PLAINTIFF'S RFC

The RFC is the most a person can do despite his physical or mental impairments. *See* 20 C.F.R. § 404.1545. "The ALJ assesses a claimant's RFC based on all the relevant evidence in [the] case record." *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) (quotations and citation omitted). In formulating an RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. 20 C.F.R. § 404.1545; *see also* Social Security Ruling ("SSR") 96-8p, available at 1996 WL 374184. In determining a claimant's RFC, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174-75 (9th Cir. 2008) (affirming the ALJ's translation of moderate functional limitations into the claimant's RFC).

At steps two and three, the ALJ considered Plaintiff's functioning in certain limitation areas, which is known as the "paragraph B" criteria. (Tr. 18). The ALJ determined that Plaintiff has a moderate limitation concentrating, persisting, or maintaining pace. (*Id.*) Further, the ALJ expressly noted that

> [t]he limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning. The following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis.

(Tr. 18.) In computing Plaintiff's RFC, the ALJ determined that Plaintiff could perform a full range of work at all exertional levels, and he has non-exertional limitations in "understanding and carrying out simple instructions in a work environment with few changes" and "no contact with the general public and occasional contact with coworkers and supervisors." (Tr. 18-19.)

Plaintiff argues that Plaintiff's RFC is inconsistent with his moderate limitation in maintaining concentration, persistence, and pace. Pl.'s Opening Br. 10. According to Plaintiff, his RFC limitation of only being able to understand and carry out simple instructions was insufficient in capturing his true work limitations. *Id.* at 10-12. Plaintiff further contends that the RFC finding does not capture his limitations in concentration, persistence and pace as identified by Cynthia Alvarado, MA, and Dr. Greg Palatto, MD. *Id.* at 12-13.

The ALJ's RFC finding was supported by substantial evidence. As was expressly noted in the decision, the ALJ's finding that Plaintiff had a moderate limitation in concentration, persistence, and pace was used for evaluating Plaintiff's mental impairments identified in the "paragraph B" criteria. The paragraph B criteria are used to rate the severity of mental impairments at steps two and three of the sequential disability determination: "[T]he limitations identified in the 'paragraph B' . . . criteria are not an RFC assessment." Social Security Ruling (SSR) 96-8p, *available at* 1996 WL 374184, at *4.

Moreover, the Ninth Circuit has held that a limitation to simple instructions can account for a moderate limitation in concentration, persistence, or pace when consistent with the medical evidence. *See, e.g., Stubbs- Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) ("An ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony."); *Hairston v. Saul*, 827 Fed. App'x. 772, 773 (9th Cir. 2020) (concluding that an

RFC limitation to simple, repetitive tasks and preclusion to public contact adequately accounted for the plaintiff's moderate limitations in concentration, persistence and pace). Here, the ALJ similarly found that, despite Plaintiff's moderate limitations in concentration, persistence, and pace, he can perform a full range of work at all exertional levels and is limited to "understanding and carrying out simple instructions in a work environment with few changes" and "no contact with the general public and occasional contact with coworkers and supervisors." (Tr. 18-19.)

Additionally, contrary to Plaintiff's contentions otherwise, the RFC finding is supported by the medical evidence. In a July 2018 mental consultative evaluation, Plaintiff's attention span and working memory were found to be average, and he demonstrated adequate attention, persistence, and pace on examination. (Tr. 21 (citing Tr. 301, 303.)) Plaintiff points to statements from Ms. Alvarado and Dr. Palatto concerning Plaintiff's limitations, Pl.'s Opening Br. 12-13, however; as the ALJ determined, those statements were in made in 2012 and 2013 respectively, which is before the relevant period began in 2018. (Tr. 25-26, 29.) Plaintiff also points to evidence of his own subjective symptom testimony as improperly considered evidence—however, Plaintiff does not contest that the ALJ improperly rejected his subjective symptom testimony.

In sum, the ALJ reasonably weighted the record evidence and reasonably accounted for all Plaintiff's limitations. The ALJ's RFC finding is therefore supported by substantial evidence.

## II.    LAY WITNESS TESTIMONY

An ALJ may discount lay witness testimony if she provides reasons that are germane to each witness. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). Any error in failing to address lay witness testimony can be harmless if (a) the ALJ's reasons for rejecting the claimant's testimony apply equally to similar lay witness testimony or (b) the lay witness testimony is

contradicted by more reliable medical evidence. *Molina v. Astrue*, 674 F.3d 1104, 1117, 1119 (9th Cir. 2012).

Plaintiff's friend, Mickie Pro, prepared third-party function report on behalf of Plaintiff, which described his limitations. (Tr. 175-183.) Mr. Pro alleged that Plaintiff has significant social limitations, including frequent manic and violent outbursts. (Tr. 176-77, 79-80.) Mr. Pro indicated that Plaintiff needs constant assistance, guidance and reminders to "do [the] basics," such as bathing, eating, and self-care. (Tr. 177-78.) Mr. Pro further reported that Plaintiff has significant concentration limitations, such that Plaintiff could only pay attention for one to two minutes. (Tr. 181.) The ALJ did not discuss Mr. Pro's lay witness statement.

Plaintiff argues that the ALJ improperly rejected lay witness testimony from Plaintiff's friend, Mr. Pro. Pl.'s Opening Br. 14. Plaintiff contends that the ALJ's failure to consider this testimony was not harmless because the lay witness testimony offered insight into additional workplace barriers for Plaintiff, including difficulties with responding appropriately to authority figures and different times of instruction. *Id.* at 14-15.

The ALJ's error in failing to address Mickie P.'s lay witness testimony was harmless because (1) his testimony was substantially similar to Plaintiff's testimony, which was correctly discredited, and (2) Mr. Pro's lay witness testimony contradicted with medical evidence.

First, both Plaintiff and Mr. Pro alleged substantially similar limitations concerning Plaintiff's social limitations and ability to concentrate. *Compare* Tr. 41, 44, 158-65, *with* Tr. 176-83. Plaintiff acknowledges that "the ALJ had validly rejected [P]laintiff's testimony" in this case. Pl.'s Opening Br. 14. As the ALJ discussed in rejecting Plaintiff's testimony, Plaintiff engaged in social activities that indicated a higher capacity for social interactions beyond what he alleged: Plaintiff reported making friends; involvement in romantic relationships; attending programs and

group activities where he was respectful and engaged; going out in public, such as the library, church, and large stores; and volunteering and eating at a shelter kitchen. (Tr. 23 (citing Tr. 302, 302, 487, 616, 658, 688, 809, 832, 837, 935, 1313.)) The ALJ further noted that Plaintiff engaged in activities that undermined his complaints of significant concentration difficulties: Plaintiff watched movies, cooked, sewed, meditated, read, and gardened. (Tr. 22-23 (citing Tr. 290.)) Plaintiff also testified at the hearing that he does not need reminders to take medications or bathe, and he gets along well with people that he works with at his volunteer position. (Tr. 46-47.) Thus, given the similarity between both Plaintiff and Mr. Pro's testimony, the ALJ's reasons for rejecting Plaintiff's testimony applies with equal force to Mr. Pro's testimony.

Second, the ALJ relied on medical evidence that contradicts Mr. Pro's lay witness testimony. Mr. Pro reported that Plaintiff has difficulty following instructions, noting that he becomes combative and oppositional. (Tr. 181.) The ALJ relied on a July 2018 mental consultative evaluation in which Plaintiff demonstrated adequate attention. (Tr. 21, 26 (citing Tr. 303)). Notes from that evaluation indicated that Plaintiff did not have any trouble following instructions and that he was friendly. (Tr. 303.) In sum, any error in the ALJ's failure to discuss Mr. Pro's lay witness testimony constituted harmless error.

## III.    STEP TWO FINDINGS

Plaintiff argues that the ALJ erred at step two by finding that Plaintiff was not severely impaired by his physical impairments, which includes cervical spine degenerative disc disease and a history of infant heart and intestinal surgeries. Pl.'s Opening Br. 15-17. Plaintiff also asserts that given the totality of his "physical circumstances," including his height, weight, and medically determinable impairments, he can only perform light work. *Id.* at 16.

At step two, the ALJ determines whether the claimant has an impairment that is both medically determinable and severe. 20 C.F.R. § 404.1520(c). An impairment is medically determinable if it is diagnosed by an acceptable medical source and based upon acceptable medical evidence. SSR 96-4p, *available at* 1996 WL 374187; 20 C.F.R. § 404.1513(a). The step two threshold is low; the Ninth Circuit describes it as a "de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). Omissions at step two are harmless if the ALJ's subsequent evaluation considered the effect of the impairments omitted at step two. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

Here, the ALJ determined at step two that Plaintiff's physical conditions do not constitute severe medically determinable impairments because they "have caused only transient or mild symptoms and limitations, including vocational limitations, or are otherwise not adequately supported by the medical evidence in the record." *(Id.)* The ALJ also found, however, that Plaintiff's major depressive disorder, PTSD, schizotypal personality disorder, unspecified depressive disorder, bipolar disorder, anxiety disorder, autism spectrum disorder and ADHD were medically determinable and severe. (Tr. 16.) As such, "[a]ny alleged error at step two was harmless because step two was decided in [plaintiff's] favor with regard to other ailments." *Mondragon v. Astrue*, 364 Fed. Appx. 346, 348 (9th Cir. 2010) (citing *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005)).

Further, any alleged error concerning Plaintiff's physical impairments at step two did not prejudice the remaining steps of the sequential analysis. *See Burch*, 400 F.3d at 682. "The mere existence of an impairment is insufficient proof of a disability." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993). As the ALJ noted, there was no evidence in the record that Plaintiff was treated for any physical conditions, other than acute issues, since 2017. (Tr. 17.) Concerning

Plaintiff's cervical degenerative disc disease, the ALJ noted that while an x-ray of Plaintiff's

cervical spine in January 2017 showed mild disc space narrowing at C6-7, Plaintiff presented a

full range of motion in his neck on exam one month later and again in July 2018, and Plaintiff

did not further report any neck problems. (Tr. 17 (citing Tr. 236, 238, 293-96.)) Concerning his

history of heart and intestinal surgeries as a child, the ALJ found that a January 2017

echocardiogram revealed no concerning findings, and a cardiovascular exam in September 2018

showed a normal heart rate with regular rhythm and normal heart sounds with no gallop, friction

rub, or murmur heard. (Tr. 17 (citing Tr. 408.))

The ALJ also properly relied on medical evidence demonstrating that Plaintiff's stature

did not impose physical limitations beyond his RFC. At a physical consultative examination with

Dr. John Ellison, MD, in July 2018, Plaintiff reported that he had vertigo, but he had no

problems with sitting, standing, walking, standing, or lifting and carrying up to twenty pounds.

(Tr. 17 (citing Tr. 295-96.)) Additionally, while Dr. Ellison noted that Plaintiff was short at five

feet two inches tall with a very small frame, Dr. Ellison did not otherwise find any limitations

due to Plaintiff's stature: Dr. Ellison reported that Plaintiff was not malnourished and that he had

normal motor strength, bulk, and tone, which is a finding that is consistent throughout the record.

(Tr. 17 (citing Tr. 295-96); *see also* Tr. 239, 246-47, 257.)) Dr. Ellison's findings were further

supported by state agency medical consultants' opinions, which opined that Plaintiff's physical

impairments were not severe, were unsupported by objective findings, and physical examination

findings were completely normal. (Tr. 63, 76.) As such, the ALJ did not err in finding that

Plaintiff's physical conditions did constitute severe medically determinable impairments at step

two or beyond.

## IV.    STEP FIVE FINDINGS

Plaintiff argues that the ALJ relied on erroneous VE testimony. Pl.'s Opening Br. 17-20. "If a claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do." *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). The Commissioner may meet the burden of showing that there is other work in "significant numbers" in the national economy that the claimant can do by in two ways: (1) "by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2," or (2) "by the testimony of a vocational expert." *Id.*

An ALJ can permissibly rely on the testimony of a qualified VE to guide the analysis at step five. *Ford v. Saul*, 950 F.3d 1141, 1160 (9th Cir. 2020). SSR 00-4p "clarifies [the Social Security Administration's] standards for the use of [VEs] who provide evidence at hearings before [ALJs]." Soc. Sec. Reg. ("SSR") 00–4p, *available at* 2000 WL 1898704, *1. This policy interpretation ruling requires that "[o]ccupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the [Dictionary of Occupational Titles (DOT)]." *Id.* at *2. To meet this requirement, "[w]hen a . . . VE provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE . . . evidence and the information provided in the DOT." *Id.* at *4; *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (recognizing an ALJ's duty to ask about potential conflicts between VE testimony and the Dictionary of Occupational Titles (DOT)). "When there is an apparent unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled."  SSR 00-4p at *2; *Massachi*, 486 F.3d at 1152-53.

In this case, the ALJ proposed a hypothetical to the VE with the limitations set forth in Plaintiff's RFC. (Tr. 49.) The VE testified that an individual with the limitations set forth in Plaintiff's RFC could perform work as a (1) car lot attendant, DOT # 915.687-022, which the VE testified requires a light exertional capacity and an SVP of 2; and (2) floor cleaner, DOT # 381.687-034, which requires a medium exertional capacity and an SVP of 2. (Tr. 50.) The ALJ later determined in her decision that, pursuant to SSR 00-4P, "the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." Tr. 29.

### A.    *Car Lot Attendant*

Plaintiff argues that the ALJ improperly relied on testimony concerning the car lot attendant job that conflicted with either the DOT or Plaintiff's RFC in three ways based on the job's (1) exertional level; (2) reasoning level; and (3) interaction with the public. Pl's Opening Br. 19. The Court does not find any of these arguments persuasive.

First, Plaintiff argues that the VE's testimony concerning the car lot attendant job's exertional level was incorrect. According to the DOT, the job of a car lot attendant requires a medium exertional level. DOT 915.687-022, *available at* 1991 WL 687875. Plaintiff correctly points out that the VE's testimony, which stated that the car lot attendant job requires a light exertional level, conflicts with the DOT. Pl.'s Opening Br. 19. Plaintiff does not argue, however, that the ALJ's reliance on this testimony constituted harmful error. Plaintiff's RFC permits him to perform a full range of work at all exertional levels. (Tr. 18.) Thus, because work at a medium exertional level is still consistent with Plaintiff's RFC, any error in the VE's testimony was harmless.

Second, Plaintiff argues that his RFC is incompatible with the job as a car lot attendant, which requires a reasoning level of two. Plaintiff's RFC limits Plaintiff to understanding and

carrying out "simple instructions" in a work environment with "few changes." (Tr. 19.) Plaintiff correctly notes that the car lot attendant job requires reasoning level of two. *See* DOT 915.687-022. A reasoning level of two requires a claimant to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." Dictionary of Occupational Titles ("DOT"), App. C (*available at* 1991 WL 688702).

Plaintiff asserts that his RFC limits him to performing jobs at a reasoning level of one, which requires a claimant to "apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Id.* The Court disagrees. Both Plaintiff's RFC and level-two reasoning limits a claimant to working in an environment with "few" changes. Moreover, the Ninth Circuit has concluded that a reasoning level of two appears consistent with an RFC limitation of carrying out "simple" tasks. *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015) (concluding that while there is a conflict between level three reasoning and an RFC limitation to simple tasks, an RFC limitation to simple tasks appears consistent with jobs that require a level 2 reasoning) (citing *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (holding that "level-two reasoning appears more consistent with [the p]laintiff's RFC" that limits Plaintiff to simple work tasks)). As such, given that Plaintiff does not cite to any authority that states otherwise, Plaintiff's RFC limitation is consistent with a reasoning level two job.

Third, Plaintiff argues that the VE erroneously testified that the car lot attendant job would have no public contact. According to the DOT description, a worker performing the car lot attendant job

> Cleans and services used cars at used-car lot: Cleans interior and exterior of cars being offered for sale. Repairs and changes tires. Keeps used-car lot neat and

orderly. May clean and change spark plugs or replace windshield wiper blades and arms. *May pick up and deliver cars to customers.* May clean new cars. May replenish fluids for battery, radiator, crankcase, transmission, and brakes. May replace battery.

DOT 915.687-022 (emphasis added). Plaintiff argues that he could not perform the job of a car lot attendant because his RFC precludes his from public contact, and the job may require him to deliver cars to customers. However, the job description only states that an employee "may" pick up and deliver cars to customers. The DOT defines "may" items as items that "describe duties required of workers in this occupation in some establishments but not in others. The word 'May' does not indicate that a worker will sometimes perform this task but rather that some workers in different establishments generally perform one of the varied tasks listed." *Parts of the Occupational Definition*, 1991 WL 645965. As such, the VE did not err in testifying that a car lot attendant job did not involve public contact. (*See* Tr. 50.) Thus, the VE's testimony is consistent with the possible range of activities within that occupation as identified in the DOT and Plaintiff's RFC. Accordingly, there was no conflict between the DOT and the VE's testimony that someone with plaintiff's limitations can perform the job of a car lot attendant.

   B.    *Floor Cleaner*

   Finally, Plaintiff argues that VE likely misidentified the job of a "floor cleaner," because the VE cited the DOT code for a job titled "floor waxer." Pl.'s Opening Br. 19-20. According to Plaintiff, the VE must have intended to identify a different job, because Plaintiff believes that cleaning floors is "substantially different" than waxing floors.

   The ALJ did not err in relying on the VE's testimony that Plaintiff could perform the job of a floor waxer as defined in the DOT. The VE testified that Plaintiff could perform the job of a floor cleaner, DOT 381.687-034, which would involve coming into a building lobby after business hours to perform the work. (Tr. 50). Plaintiff is correct that the VE provided the DOT

number for the job entitled "floor waxer" but referred to the job title as "floor cleaner." (*Id.*)

Plaintiff is mistaken, however, in asserting that a floor cleaner is "substantially different" from a

floor waxer. According to DOT 381.687-034, a floor waxer "*cleans*, waxes, and polishes floors

by hand or machine: Removes dirt and blemishes from floor, using various cleaning solvents and

compounds, according to composition of floor." DOT 381.687-034, *available at* 1991 WL

673262 (emphasis added). Simply put, a floor waxer involves floor cleaning. Moreover, Plaintiff

does not point to any authority in support of this argument. Plaintiff therefore does not identify

any harmful error in the ALJ's reliance on the VE's identification of the job with a DOT number

for a floor waxer.

## CONCLUSION

Based on the foregoing reasons, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

DATED this ___ day of July, 2022.

_____

HON. MARK D. CLARKE
United States Magistrate Judge